

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00344-CV

**IN THE INTEREST OF R.A.E.** and J.D.F., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA01868
Honorable Susan D. Reed, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
               Irene Rios, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: March 16, 2022

AFFIRMED

Appellant Father appeals the trial court's order terminating his parental rights to his children, Ray and Jack (collectively, "the children").[1] Father challenges the sufficiency of the evidence supporting termination under statutory ground (E) and that termination was in the children's best interests. We affirm.

## BACKGROUND

The Department of Family and Protective Services ("the Department") became involved in the underlying case on September 11, 2019, when it received a report that the children's

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the children using the pseudonyms "Ray" and "Jack." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order terminates both Mother's and Father's parental rights to the children, but only Father appeals the trial court's order.

youngest sibling, Paul, was being physically abused by Mother's boyfriend, V.R.[2] The previous night, Paul was taken to the hospital as a result of V.R.'s abuse. The Department discovered that V.R. had been physically abusing Ray, Jack, and Paul for several months.

On September 12, 2019, the Department filed a petition seeking temporary managing conservatorship of the children and termination of Father's parental rights. On June 30, 2021, the trial court held a bench trial. The trial court heard testimony from: Ray's therapist, Lindsay King; Mother's therapist, Patricia Boone; Paul's pediatrician when he was taken to the hospital, Jennifer Sabo, M.D.; Father's probation officer, Francisco Claudio; the Department's assistant caseworker, Rudy Martinez; the Department's caseworker, Delia Longoria; Mother; and Father.

On July 28, 2021, the trial court rendered an order terminating Father's parental rights to Ray and Jack. Specifically, the trial court terminated Father's parental rights based on statutory grounds (E) and (O) in section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O). The trial court also found it was in the children's best interests to terminate Father's parental rights. *See id.* § 161.001(b)(2). Father appealed.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

---

[2] We refer to the children's youngest sibling with the pseudonym "Paul" and Mother's boyfriend by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Paul is not Father's child and is not the subject of this appeal.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### STATUTORY GROUNDS

Father argues the evidence is legally and factually insufficient to support the trial court's finding that his parental rights should be terminated under statutory predicate ground 161.001(b)(1)(E) of the Texas Family Code.

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the children's best interests. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsections 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Father. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Due process requires us to review the trial court's findings under subsection 161.001(b)(1)(E) of the Texas Family Code. *See In re C.W.*, 586 S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section 161.001(b)(1)(D) or (E) and the parent challenges that finding on appeal, due process requires the appellate court to review that finding and detail its analysis.").

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

Endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment . . . ." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, endangerment means to expose the children to loss or injury or to jeopardize their emotional or physical well-being. *Id.* The trial court must determine "whether evidence exists that the endangerment of the child[ren]'s physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "It is not necessary that the parent's conduct be directed at the child[ren] or that the child[ren] actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.). "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.).

Here, the trial court heard evidence that Father was either aware the children were being physically abused by V.R. or should have been aware the children were being physically abused

by V.R. and failed to protect the children from that dangerous environment. Mother testified the abuse occurred for a few months before the children were removed by the Department. Father testified the children visited him every weekend prior to his arrest on June 3, 2019.[3] Longoria, the caseworker, testified that paternal grandmother was aware the abuse was occurring because she could see bruises on the children, presumably when they were visiting Father. King, Ray's therapist, testified V.R. cut Ray with a knife across his abdomen and Ray showed King his scar from the cut during one of his therapy sessions.

This testimony indicates the signs of abuse were open, obvious, and physically apparent to anyone who would be caring for the young children. Although Father testified he was unaware of the abuse, the trial court—as the sole judge of the credibility of the witnesses and the weight to be given their testimony—was within its right to disbelieve Father. *See HealthTronics, Inc.*, 382 S.W.3d at 582. Father disregarded the children's safety when he chose to ignore the obvious signs of abuse and return the children to Mother's abusive household, resulting in a repeated course of conduct that endangered the children. *See R.S.-T.*, 522 S.W.3d at 110. Accordingly, the trial court could have formed a firm belief or conviction that Father's course of conduct "endanger[ed] the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Moreover, at the time of trial, Father was incarcerated for a violation of his community supervision. Father was charged with possession of methamphetamines in the underlying offense, and the State filed a motion to revoke Father's community supervision because, among other things, Father had "multiple positive drug [tests] . . . ." "[B]ecause a parent's illegal drug use exposes h[is] children to the possibility the parent may be impaired or imprisoned, evidence of

---

[3] Although it is unclear whether the abuse occurred before or after Father was arrested, Father admitted he was released from jail and placed on community supervision after his arrest. Longoria testified that Father was having visits before the children were removed. Boone's testimony indicated the abuse was occurring during periods that Father was having visitation.

illegal drug use supports a finding that the parent engaged in a course of conduct that endangered the children's physical or emotional well-being." *See J.L.B.*, 2017 WL 4942855, at *3; *see also J.O.A.*, 283 S.W.3d at 345 ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."). Accordingly, the trial court could have formed a firm belief or conviction that Father's illegal drug use was a course of conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the evidence is legally and factually sufficient to support the trial court's termination finding under subsection 161.001(b)(1)(E) of the Texas Family Code. *See id.*; *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573.

## BEST INTERESTS

Father argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4]

---

[4] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home;

*See id.* § 263.307(b). We also consider the *Holley* factors.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet.

---

(6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*Children's Desires, Age, and Vulnerabilities*

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied). Here, the children are less than four years old. Longoria testified they are well-cared for by their current foster placement. For example, King testified Ray has experienced night terrors and difficulty sleeping. However, the current foster parents have addressed these issues by providing a night light for Ray and going through "a nighttime routine" with Ray "to help him get to sleep calmly, and that has really helped him" cope with those issues. Further, Longoria testified the children "were just really comfortable with [the current foster parents]" and "were not fearful of the environment." Longoria stated she thought it was in the children's best interests to remain in their current placement.

Although the evidence shows Father was consistent with his weekly supervised visits when he was not in jail, the record also indicates Father was not available during periods of time that he was incarcerated for drug use and possession. These factors weigh in favor of termination because the children are very young, well-cared for by their foster family, and have spent minimal time with Father.

*Children's Present and Future Emotional and Physical Needs, Plans for the Children, and Parental Abilities*

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re S.J.R.-Z.*, 537 S.W.3d at 693. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a).

The evidence presented at trial showed the children endured several months of catastrophic physical abuse. King diagnosed Ray with adjustment disorder with anxiety and stated he experienced

symptoms of post-traumatic stress disorder and separation anxiety. As a result, Ray experienced night terrors, difficulty sleeping, anxiety, nervousness, a fear of public restrooms, a fear of unknown places, and was fearful of men. Since coming into the Department's care, Ray has regularly attended therapy. King testified that Ray has learned coping skills, how to communicate his fears and concerns, how to receive comfort from others, and his anxieties have significantly decreased. King diagnosed Jack with adjustment disorder with mixed disturbances of emotions and conduct.[6]

It is clear from this testimony that the children have extensive emotional needs. King and Longoria both opined the current foster family has continued to address and accommodate the children's emotional needs and the children have improved significantly since the Department's intervention. *See In re S.D.*, 980 S.W.2d 758, 764 (Tex. App.—San Antonio 1998, pet. denied) (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs"). Longoria stated the current foster parents have shown "a lot of patience" with the children. Finally, Longoria stated the Department plans for the children to be adopted by their current placement and the foster parents are willing to adopt both the children.

In contrast, Father either ignored the obvious signs of physical abuse the children were enduring prior to the Department's removal, or he was so inattentive to their basic needs that he failed to recognize signs of the abuse. Longoria further testified Father has not "demonstrated that he can meet the basic needs" of the children because "[h]e hasn't addressed his substance abuse[,] has not adequately maintained his psychiatric care[, and has not] had stable housing." Finally, Father would be unable to care for the children because he is currently incarcerated. These factors weigh in favor of termination.

*History of Abusive Conduct, Emotional and Physical Danger to the Children, and Magnitude, Frequency, and Circumstances of Harm to the Children*

---

[6] At the time of trial, King testified that Jack was too young to attend therapy.

"A parent endangers h[is] children by accepting the endangering conduct of other people." *In re L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at \*13 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.). "This court considers a parent's conduct before and after the Department's removal of the children." *S.J.R.-Z.*, 537 S.W.3d at 693.

As mentioned above, the children were subjected to significant and frequent physical abuse prior to the Department's intervention. Father and Longoria testified that Father had periods of possession of the children during the months they were being physically abused. Father either knew of the physical abuse and endangered the children by accepting the endangering conduct of V.R. and Mother, or Father neglected the children to such a degree that the abuse went unnoticed. Either way, Father's actions resulted in significant physical and emotional harm to the children. These factors weigh in favor of termination.

*History of Substance Abuse*

One of the factors to consider in a best interest determination is "whether there is a history of substance abuse by the child's family or others who have access to the child's home[.]" *See* TEX. FAM. CODE ANN. § 263.307(b)(8). Here, Father is on probation for an underlying drug-possession charge and is currently incarcerated because he tested positive for illegal drugs in violation of his community supervision conditions. Further, Father had been arrested five times since 2002 for drug-related offenses.[7] The trial court could have formed a firm belief or conviction that Father would continue to use drugs because of his past conduct and, due to his continued drug use, it would be in the children's best interests to terminate Father's parental rights. *In re S.J.R.-Z.*, 537 S.W.3d at 693 ("This court considers a parent's conduct before and after the Department's removal of the children."). This factor weighs in favor of termination.

*Programs Available and Parent's Acts, Omissions, and Willingness to Accept Help and Effect Positive Environmental Change*

---

[7] One of the charges was dismissed.

According to Father's service plan, which was admitted into evidence, Father was required to obtain stable employment and housing, participate and complete parenting classes, participate in weekly visitation with the children, take a drug assessment and participate in drug treatment should he test positive for drugs, pass random drug tests, participate in counseling, complete a psychological evaluation, and attend psychiatric appointments to address his mental health issues. Father completed his individual counseling, drug assessment, parenting classes, and psychological evaluation. However, Father failed multiple drug tests and did not complete drug treatment. Further, Father was diagnosed with post-traumatic stress disorder, anxiety, and depression. Longoria testified that Father failed to keep his psychiatric appointments or take medication to treat his mental health issues. Father was also unable to maintain stable housing or employment.

The trial court heard evidence that Father was unwilling to address the Department's concerns by participating in his services. This lack of effort indicates Father was unwilling to accept help or take steps to effect positive environmental change for the children. These factors also weigh in favor of termination.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

### CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice